Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| ROBERTO W. CHEVRES COLÓN<br><br>Recurrido<br><br>V.<br><br>**AUTOGERMANA, INC.**;<br>POPULAR AUTO DE PUERTO RICO;<br>UNIVERSAL INSURANCE COMPANY;<br>ORLANDO RODRÍGUEZ;<br>SU ESPOSA MENGANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; FULANO Y SUTANA DE TAL<br><br>Peticionaria | KLCE202500027 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>SJ2018CV06229<br><br>Sobre:<br>Dolo contractual; Incumplimiento de contrato; Fraude; Daños y perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de marzo de 2025.

Comparece ante nos Autogermana, Inc. (Autogermana o peticionario) y solicita que revisemos una *Sentencia Parcial* emitida el 29 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En dicho dictamen, el TPI declaró Con Lugar las solicitudes del Sr. Orlando Rodríguez Albertorio (señor Rodríguez Albertorio) y Popular Auto para desestimar la *Demanda* que presentó el señor Roberto W. Chevres Colón (señor Chevres Colón o recurrido) por estar prescrita. No obstante, el Foro Primario determinó que subsistían las causas de acción de dolo contractual y fraude en contra Autogermana.

---

[1] Apéndice de *Petición de Certiorari*, Anejo 14, págs. 78-86.

Por los fundamentos que se exponen a continuación, se expide el auto de *certiorari* y confirmamos la determinación recurrida.

Veamos el trasfondo fáctico y procesal atinente a este recurso.

**I.**

El caso ante nuestra consideración se originó el 13 de agosto de 2018, cuando el señor Chevres Colón presentó una *Demanda* por dolo contractual, incumplimiento de contrato, fraude y daños y perjuicios en contra de Autogermana, Popular Auto, Universal Insurance Company (Universal), el señor Rodríguez Albertorio, entre otros.[2] En esta, el recurrido alegó que el 27 de junio de 2014, acudió a Autogermana para recoger un vehículo BMW X-5 que había adquirido para su esposa. Sostuvo que, en dicho establecimiento, el señor Rodríguez Albertorio le ofreció un vehículo usado BMW 335-I del año 2014, el cual tenía 8,500 millas recorridas. Adujo que le explicó al señor Rodríguez Albertorio que, pese a que le gustó el automóvil, no podía cambiar su vehículo BMW 328-I por adeudar sobre $54,000.00 a Popular Auto. Ante ello, el señor Rodríguez Albertorio le expresó que Autogermana iba a saldar el balance de cancelación del automóvil si el señor Chevres Colón compraba el BMW 335-I. El recurrido puntualizó que ante dicha representación, otorgó en *trade-in* su BMW 328-I para adjudicar $54,751.13 a la compraventa del BMW 335-I por la suma de $79,275.00. Asimismo, expuso que otorgó en *trade-in* un Mini-Cooper, que debía $28,714.16, por la compraventa del BMW X-5.

El señor Chevres Colón especificó que el señor Rodríguez Albertorio le recomendó financiar ambos vehículos, el de su esposa y el BMW 335-I, con Popular Auto. Ante ello, aseveró que se otorgó el Contrato de Compraventa Número 80233, en el que se indicó que el recurrido adquirió un BMW 335-I usado con 8,500 millas recorridas

---

[2] *Íd.*, Anejo 1, págs. 1-7.

y que intercambió el BMW 328-I por $54,751.13. No obstante, esgrimió que, sin su autorización, Autogermana y el señor Rodríguez Albertorio presentaron una información distinta a Popular Auto, al indicarle que el BMW 335-I era un vehículo nuevo con 0 millas.

Por otro lado, el recurrido particularizó que adquirió una póliza de seguro con Universal que contenía un seguro *Guaranteed Asset Protection* (GAP) para cubrir cualquier diferencia entre el valor de los vehículos y el balance de cancelación de la deuda en la eventualidad de se declarara como pérdida total por un accidente.

El señor Chevres Colón relató que el 4 de junio de 2016, sufrió un accidente, en el que Universal declaró el BMW 335-I como pérdida total. Adujo que dicha compañía solamente pagó $45,980.86 por la pérdida, lo que resultó en una diferencia de $16,682.12, más los intereses que posteriormente Popular Auto le cobró. Manifestó que Universal le indicó que no le honraría la cubierta GAP por Autogermana vender el BMW 335-I a sobreprecio para ocultar la deficiencia entre el valor de mercado del BMW 328-I dado en *trade-in* y el saldo de la deuda. Según el recurrido, dicha deficiencia se sumó al precio del BMW 335-I para ser refinanciado en el préstamo con Popular Auto. Ante esto, precisó que si el señor Rodríguez Albertorio o Autogermana le hubiesen expresado que el BMW 328-I entregado en *trade-in* adeudaba más que su valor en el mercado y que la deficiencia se le estaría adjudicando al precio del BMW 335-I, nunca hubiese realizado la compraventa.

El señor Chevres Colón alegó que el 25 de mayo de 2017, presentó una *Querella* en el Departamento de Asuntos del Consumidor (DACo) contra Autogermana, Popular Auto, Universal, el señor Rodríguez Albertorio, entre otros. No obstante, especificó que el 21 de marzo de 2018, el DACo autorizó su solicitud de cerrar el caso para presentar una acción judicial por la lentitud del proceso.

Con relación a la causa de acción de dolo contractual, el señor Chevres Colón alegó que Autogermana y el señor Rodríguez Albertorio lo engañaron al incrementar el financiamiento del BMW 335-I por la diferencia entre el valor en el mercado del BMW 328-I y el saldo del préstamo de dicho automóvil. En lo que respecta a la causa de acción de fraude, el recurrido planteó que Autogermana y el señor Rodríguez Albertorio falsificaron la información del Contrato de Compraventa enviado a Popular Auto para indicar que el BMW 335-I era un vehículo nuevo.

En torno a la causa de acción por incumplimiento de contrato, el recurrido esbozó que en la póliza de seguros, se añadió la cubierta GAP para asegurar que en caso de declarar el vehículo como pérdida total, Universal cubriera cualquier diferencia entre su valor en el mercado y el balance de cancelación del préstamo, acción que Universal denegó. En lo que concierne a la causa de acción de daños y perjuicios, el señor Chevres Colón señaló que Popular Auto fue negligente al no inspeccionar el BMW 335-I y cerciorarse que los datos y el millaje correspondiera a la información ofrecida por Autogermana y el señor Rodríguez Albertorio, a pesar de tener un oficial para realizar dicha labor. Consecuentemente, el recurrido solicitó una suma de $300,000.00, a pagarse de manera solidaria, entre otras sumas.

El 15 de octubre de 2018, Autogermana presentó su *Contestación a la demanda de Autogermana, Inc.*[3] En síntesis, la peticionaria negó cualquier alegación de impropiedad, culpa o negligencia durante el proceso de compraventa o financiamiento del vehículo. Asimismo, negó la existencia de vicios en el consentimiento del señor Chevres Colón, por lo que peticionó prueba sobre tal alegación. Entre otras defensas, planteó que la *Demanda* estaba

---

[3] *Íd.*, Anejo 2, págs. 8-14.

prescrita y que el recurrido no tramitó diligentemente el caso, por lo que estaba impedido de incoar la reclamación.

Tras varios trámites procesales, el 20 de abril de 2023, Autogermana presentó una *Moción de sentencia sumaria parcial por caducidad*.[4] En esta, alegó que la causa de acción de nulidad de contrato por vicios del consentimiento se debía desestimar con perjuicio, ya que caducó por presentarse posterior al término de cuatro (4) años desde que se consumó el contrato, de acuerdo con el Artículo 1253 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3512, aplicable a los hechos de este caso. Para ello, el peticionario arguyó que no existía controversia sobre los siguientes hechos:

1. El día 26 de junio de 2014, el demandante Roberto William Chéveres Colón adquirió mediante arrendamiento financiero bajo contrato expedido por Popular Auto, el vehículo BMW 335I, MY 2014, con VIN: WBA3A9C59EF478229 [...]
2. Dicho vehículo fue adquirido por Popular Auto del concesionario de Autogermana, para ser entonces arrendado al demandante Roberto William Colón [...]
3. La Demanda en el presente caso fue presentada el 13 de agosto de 2018 [...]

Sobre el particular, Autogermana adujo que, en vista de que la adquisición y el arrendamiento financiero del BMW 335-I ocurrió el 26 de junio de 2014, el recurrido tenía hasta el 26 de junio de 2018 para ejercer su reclamación. Sin embargo, esgrimió que no fue hasta el 13 de agosto de 2018 que el señor Chevres Colón presentó la *Demanda*. Además, manifestó que la presentación de la *Querella* ante el DACo no interrumpió el término para incoar la *Demanda*, ya que los términos de caducidad no podían interrumpirse ni prolongarse.

El 21 de abril de 2023, el señor Rodríguez Albertorio presentó una *Moción informativa*, mediante la cual se unió a la solicitud de sentencia sumaria presentada por Autogermana por entender que la causa de acción de dolo grave había caducado.[5]

---

[4] *Íd.*, Anejo 3, págs. 15-23.
[5] *Íd.*, Anejo 4, págs. 24.

En igual fecha, Popular Auto presentó una *Moción reiterando desestimación sumaria de la alegación de dolo de la parte demandante.*[6] Entre otros asuntos, alegó que el término prescriptivo del Artículo 1253 del Código Civil de 1930, *supra*, sec. 3512, de nulidad del contrato por vicio del consentimiento era fatal e improrrogable que debía interrumpirse mediante la presentación oportuna de la *Demanda.*

El 16 de mayo de 2023, el señor Chevres Colón presentó una *Oposición a solicitud de sentencia sumaria presentada por Autogermana, a la cual se unieron el Sr. Orlando Rodríguez y Popular Auto, LLC.*[7] Mediante esta, el recurrido argumentó que Autogermana incumplió con la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, al no indicar los asuntos que estaban en controversia y la causa de acción por la cual se solicitó sentencia sumaria.

El recurrido planteó que la solicitud de sentencia sumaria presentada por Autogermana bajo el argumento de caducidad de la acción de dolo no procedía, ya que dicha parte le respondía de manera independiente por las causas de incumplimiento de contrato, fraude, daños y perjuicios. Al respecto, puntualizó que, por virtud del Artículo 1864 del Código Civil, *supra*, sec. 5294, las acciones personales que no tuviesen un término especial de prescripción vencían a los quince (15) años. Además, señaló que una acción de daños por el quebrantamiento de un contrato prescribía a los quince (15) años. Igualmente, arguyó que el señor Rodríguez Albertorio y Popular Auto no podían ampararse en que la acción por dolo contractual caducó previo a presentar la *Demanda*, ya que le respondían por otras causas de acción que se presentaron dentro del término prescriptivo de quince (15) años.

---

[6] *Íd.*, Anejo 6, págs. 26-27.
[7] *Íd.*, Anejo 8, págs. 29-45.

Por otro lado, el recurrido afirmó que Autogermana tenía razón en que los términos de caducidad no eran susceptibles de interrupción. Sin embargo, subrayó que podían ser objeto de suspensión. De esta forma, alegó que ante el paso del Huracán María, el Tribunal Supremo de Puerto Rico ordenó la suspensión de los trabajos en los tribunales hasta el 1 de diciembre de 2017. Por ello, adujo que el término de caducidad de cuatro (4) años para instar la causa de acción por dolo contractual comenzó a decursar nuevamente desde el 1 de diciembre de 2017, razón por la que podía presentar la *Demanda* hasta el 8 de septiembre de 2018.

Posteriormente, el 31 de mayo de 2018, Autogermana presentó una *Réplica a oposición a solicitud de sentencia sumaria presentada por Autogermana, a la cual se unieron el Sr. Orlando Rodríguez y Popular Auto, LLC*.[8] En esta, esbozó que el señor Chevres Colón concluyó erróneamente que la suspensión de los trabajos en los tribunales por el Huracán María tuvo un efecto en la presentación de la *Demanda* que nos concierne. Esto, al citar que la referida suspensión aplicó únicamente a los términos que vencieron entre el 19 de septiembre y el 30 de noviembre de 2017. Indicó que, por el contrario, el término de caducidad que tenía el recurrido para presentar su causa de acción venció el 26 de junio de 2018, por lo que no quedó suspendido por el efecto del Huracán. Con respecto a las alegaciones de responsabilidad por otras causas de acciones, el peticionario concibió que la única reclamación interpuesta en su contra era dolo contractual.

Subsiguientemente, el 28 de junio de 2023, el señor Chevres Colón presentó una *Dúplica a réplica presentada por Autogermana*.[9] Entre sus planteamientos, expresó que la interposición de la *Querella* ante el DACo y las *Resoluciones* emitidas por el Tribunal Supremo de

---

[8] *Íd.*, Anejo 9, págs. 46-50.
[9] *Íd.*, Anejo 11, págs. 53-58.

Puerto Rico por el paso del Huracán María tuvieron el efecto de suspender el término de caducidad de cuatro (4) años para presentar la causa de acción por dolo contractual. Expresó que el caso administrativo se cerró el 21 de marzo de 2018, fecha en que volvió a decursar el término de caducidad de cuatro (4) años para incoar la *Demanda* por dolo contractual. Por ello, arguyó que la *Demanda* se presentó con trescientos (300) días de anticipación a vencer el término de caducidad de cuatro (4) años. Por otra parte, reiteró que Autogermana le respondía igualmente por las causas de acción de incumplimiento de contrato, fraude, más daños y perjuicios. Ante ello, especificó que tanto el señor Rodríguez Albertorio como Popular Auto respondían solidariamente por las otras causas de acción que se presentaron dentro del término prescriptivo de quince (15) años por intervenir o cooperar en la realización del daño, aunque cada uno fuese personalmente responsable por su propia culpa.

El 6 de julio de 2023, Popular Auto presentó una réplica para la oposición a la solicitud de sentencia sumaria de Universal, para la dúplica que presentó Autogermana y para su moción reiterando la solicitud de sentencia sumaria.[10] En resumen, subrayó que el señor Chevres Colón no presentó una reclamación en su contra ante el DACo, ya que se interpuso solamente contra Autogermana y el señor Rodríguez Albertorio. Popular Auto sostuvo que dicha *Querella* nunca se enmendó para incluir partes o alegaciones adicionales, aun cuando el recurrido conocía con anticipación los hechos objeto de esta *Demanda*. Asimismo, destacó que el DACo omitió notificarle sobre la presentación de la *Querella* al señor Rodríguez Albertorio, en vista de que no se podían presentar casos administrativos contra personas naturales en calidad de empleado de un querellado. No obstante, esgrimió que el DACo, por iniciativa propia, incluyó a

---

[10] *Íd.*, Anejo 12, págs. 59-74.

Popular Auto y a Universal como partes. Al respecto, precisó que tal acción no tuvo un efecto interruptor del término por no haberse formulado alegación o reclamación alguna contra Popular Auto y Universal. Por ello, señaló que la causa de acción en su contra estaba prescrita. A su vez, apuntó que el señor Chevres Colón no podía alegar que existía identidad de propósito o de reclamaciones en el proceso administrativo y el judicial.

Por otra parte, Popular Auto indicó que la única reclamación en su contra era en daños y perjuicios por una negligencia por omisión, más no por una obligación contractual. De esta forma, manifestó que el recurrido no interrumpió el término de un año para la reclamación de daños y perjuicios en su contra por omitir cerciorarse de que la información y el millaje del vehículo eran correctos. Lo anterior, al reiterar que la mera mención de Popular Auto en la *Querella* ante el DACo no surtió un efecto interruptor.

Sometido el asunto ante su consideración, el 29 de septiembre de 2024, el TPI emitió una *Sentencia parcial*.[11] En la misma, el Foro Primario formuló los siguientes como hechos incontrovertidos:

1. El 26 de junio de 2014, el demandante Roberto William [Chevres] Colón adquirió mediante arrendamiento financiero bajo contrato expedido por Popular Auto, el vehículo BMW 335I, MY 2014, con VIN: WBA3A9C59EF478229.
2. Dicho vehículo fue adquirido por Popular Auto del concesionario de Autogermana, para ser entonces arrendado al demandante Roberto William Chevres Colón.
3. El 25 de mayo de 2017, el demandante presentó una Querella ante el Departamento de Asuntos del Consumidor contra Autogermana y el Sr. Orlando Rodríguez. [...]
4. El demandante desistió de su *Querella* ante el Departamento de Asuntos del Consumidor el 21 de marzo de 2018.
5. La Demanda en el presente caso fue presentada el 13 de agosto de 2018. [...]

El TPI estableció que si el contrato objeto de este caso se otorgó el 26 de junio de 2014, el señor Chevres Colón tenía hasta el 26 de junio de 2018 para presentar una acción por dolo contractual.

---

[11] *Íd.,* Anejo 14, págs. 78-86. Archivada y notificada el 30 de septiembre de 2024.

Empero, determinó que dicha acción podía interrumpirse por ser un término de prescripción. Esto, al hacer notar que el propio Artículo 1253 del Código Civil, *supra*, sec. 3512, se titulaba "Término prescriptivo de la acción de nulidad". Además, citó al Tribunal Supremo de Puerto Rico en *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659 (1997), al mencionar que la acción para la nulidad de un contrato por dolo grave prescribía a los cuatro (4) años.

El Foro recurrido indicó que, el 25 de mayo de 2017, el señor Chevres Colón presentó una *Querella* ante el DACo con identidad de propósito por ser la misma causa de acción que en la *Demanda*. Sobre el particular, apuntó que, de una lectura de la *Querella*, surgió que no iba dirigida a las mismas partes que la *Demanda*, ya que todas las alegaciones se formularon en contra de Autogermana. Por ello, determinó que el procedimiento administrativo no tuvo el efecto de interrumpir la prescripción de las causas de acción contra Popular Auto y el señor Rodríguez Albertorio. Sin embargo, dispuso que el procedimiento administrativo fue un medio idóneo para que Autogermana obtuviese conocimiento de las reclamaciones en su contra, se presentó oportunamente y por una persona con legitimación. Por lo anterior, el TPI decidió que el señor Chevres Colón presentó una reclamación extrajudicial que tuvo el efecto de interrumpir el término prescriptivo de las causas de acción de dolo contractual y fraude contra Autogermana.

Así las cosas, el Foro Primario desestimó las causas de acción contra Popular Auto y el señor Rodríguez Albertorio por prescripción. No obstante, resolvió que subsistían las causas de acción de dolo contractual y fraude contra Autogermana.

Inconforme, la peticionaria presentó una *Moción de reconsideración.*[12] En esta, arguyó que el TPI se equivocó al

---

[12] *Íd.*, Anejo 15, págs. 87-93.

determinar que el término dispuesto en el Artículo 1253 del Código Civil, *supra*, sec. 3512, era de prescripción y no de caducidad. Según Autogermana, el título del artículo no surgió de la ley original, sino que se atribuía a la colección de Leyes de Puerto Rico Anotadas. Asimismo, añadió que dicho artículo no se encontraba en la sección sobre los términos prescriptivos de las acciones.

Además, Autogermana planteó que la mención de la palabra prescripción en el caso *Colón v. Promo Motors Imports, supra,* no tenía el efecto de establecer que el término para instar una acción de nulidad de un contrato era uno de prescripción. Adujo que, por el contrario, en *Almodóvar v. Méndez Román,* 125 DPR 218 (1990), el Tribunal Supremo de Puerto Rico identificó que el término del Artículo 1253 del Código Civil, *supra,* sec. 3512, era de caducidad, aun cuando los hechos de tal caso no guardaban relación con el de autos.

El 31 de octubre de 2024, el señor Chevres Colón presentó una *Oposición a solicitud de reconsideración Autogermana, Inc.*[13] Entre otros asuntos, reiteró que Autogermana le respondía por las causas de acción de incumplimiento de contrato y fraude al preparar una orden de compra fraudulenta para obtener el financiamiento del vehículo de motor adquirido por el recurrido.

El 10 de diciembre de 2024, el TPI emitió una *Resolución interlocutoria,* en la que expuso que tras evaluar los argumentos de Autogermana, se sostenía en su determinación.[14] Por ello, declaró No Ha Lugar a la solicitud de reconsideración presentada ante sí.

Aún inconforme, el 10 de enero de 2025, Autogermana presentó su *Petición de Certiorari,* en la que planteó que el TPI indició al cometer el siguiente error:

**ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL TÉRMINO**

---

[13] *Íd.,* Anejo 17, págs. 95-100.
[14] *Íd.,* Anejo 18, pág. 101. Archivada y notificada el 11 de diciembre de 2024.

**DISPUESTO POR EL ARTÍCULO 1253 DEL CÓDIGO CIVIL ERA UNO DE PRESCRIPCIÓN Y NO DE CADUCIDAD, POR LO QUE EL MISMO QUEDÓ INTERRUMPIDO Y NO PROCEDÍA LA DESESTIMACIÓN.**

En esencia, la peticionaria arguyó que el término de cuatro (4) años para incoar una acción de nulidad contractual por dolo al amparo del Artículo 1253 del Código Civil, *supra*, sec. 3512, era de caducidad. Reiteró que erróneamente, el TPI cimentó su determinación en el título del referido artículo y en el caso *Colón v. Promo Motors Imports, supra*. En cambio, enfatizó que en *Almodóvar v. Méndez Román, supra*, el Tribunal Supremo de Puerto Rico identificó que el término del Artículo 1253 del Código Civil, *supra*, sec. 3512, era de caducidad. De esta forma, subrayó que un término de caducidad no podía interrumpirse ni prolongarse, ya que su efecto extintivo era radical y automático. Por consiguiente, Autogermana consideró que la causa de acción en su contra había caducado, razón por la cual el TPI debía desestimar con perjuicio la *Demanda* que el señor Chevres Colón presentó.

Por su parte, el recurrido planteó que no procedía la solicitud de sentencia sumaria que presentó Autogermana bajo el argumento de la caducidad de la acción por dolo contractual, ya que además de dicha causa de acción, le respondía por incumplimiento de contrato, fraude y daños y perjuicios. Esto, al añadirle $17,931.13 al precio del BMW 335-I y representar a Popular Auto que dicho vehículo era nuevo, cuando realmente era usado.

Con respecto a la causa de acción de dolo contractual, el recurrido manifestó que los términos de caducidad podían ser objeto de suspensión. A su vez, puntualizó que la misma fue interrumpida por el término de suspensión concedido por el Tribunal Supremo de Puerto Rico ante el paso del Huracán María y por la *Querella* presentada en el DACo.

Por otro lado, el señor Chevres Colón esgrimió que nunca solicitó la anulación del contrato de compraventa, sino que solicitó los daños y perjuicios por el dolo incidental de parte de Autogermana. Ante ello, sostuvo que dicha reclamación de dolo incidental debía ser presentada dentro del término prescriptivo de quince (15) años.

En atención al señalamiento de error, procedemos a exponer la normativa jurídica aplicable a este recurso.

## II.

### A. *Certiorari*

El *certiorari* es el vehículo procesal que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Mediante este recurso extraordinario se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847. Contrario al recurso de apelación, el foro apelativo posee la facultad discrecional de expedir o denegar el recurso de *certiorari* toda vez que, de ordinario, se tratan de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente las instancias en las que el Tribunal de Apelaciones posee autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras*, *supra*; *Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el

ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. El referido artículo dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o a la denegación de una moción de carácter dispositivo. Véase Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1. A su vez, a modo de excepción, este tribunal puede revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El propósito de esta regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486; *800 Ponce de León v. AIG, supra*, pág. 175; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 593-594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra.*

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos considerar en el ejercicio de la facultad discrecional al atender una petición de *certiorari*. A saber, el foro apelativo intermedio debe considerar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

En la eventualidad que el tribunal apelativo deniegue la expedición del auto de *certiorari*, no será necesario que exponga las razones para tal determinación. *Rivera Figueroa v. Joe's European Shop, supra*, pág. 594; *IG Builders et al. v. BBVAPR, supra*, pág. 336. Además, el foro apelativo intermedio no asume jurisdicción sobre el asunto planteado ni dispone del mismo en sus méritos. *Torres González v. Zaragoza Meléndez, supra*, pág. 848; *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*, pág. 405.

### B. Sentencia sumaria

La sentencia sumaria es un mecanismo procesal que permite que un caso se disponga ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). A esos efectos, un hecho material es uno esencial y pertinente, que puede afectar el resultado de la reclamación conforme al derecho sustantivo aplicable. *Cruz, López v. Casa Bella y otros, supra*; *Banco Popular v. Posada*, 2024 TSPR 62, 213 DPR ___ (2024); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); véase, además, Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. La controversia sobre el hecho material debe ser real. *Ramos Pérez v. Univisión, supra*. En otras palabras, la controversia debe ser de calidad suficiente para que sea necesario que el juzgador la dirima mediante un juicio plenario. *Íd.*

Cónsono con lo anterior, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), establece que procede dictar una moción de sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas u otra evidencia demuestran que no existe una controversia real sustancial en torno a un hecho esencial y pertinente. Véase, además, *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Ahora bien, no es aconsejable dictar sentencia sumaria cuando existe controversia sobre asuntos de credibilidad o sobre aspectos subjetivos como la intención, el propósito mental o la negligencia. *Cruz, López v. Casa Bella y otros, supra*; *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 278 (2021). En este sentido, "[l]os tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009). Empero, aun cuando se deben evaluar los elementos subjetivos o de intención, no se impide la utilización de la sentencia sumaria si de los documentos se desprende la inexistencia de una controversia real y sustancial sobre los hechos materiales. *Ramos Pérez v. Univisión, supra*, pág. 219; *Birriel Colón v. Econo y otro, supra*, pág. 91. Véase también Regla 36.3 (e) de Procedimiento Civil, *supra*, R. 36.3 (e). Así pues, procede dictar sentencia sumaria cuando el juzgador está claramente convencido de que tiene ante sí todos los hechos materiales de forma no controvertida y es innecesario celebrar una vista en los méritos. *Birriel Colón v. Econo y otro, supra*.

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales con evidencia sustancial. *SLG*

*Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones, sino que debe contestar de una forma tan detallada y específica como lo haya hecho la parte promovente. *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215; Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Sin embargo, la ausencia de prueba para refutar la evidencia presentada no conduce a la concesión automática de una moción de sentencia sumaria. *Birriel Colón v. Econo y otro, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, pág. 337.

En *Meléndez González et al. v. M. Cuebas, supra*, el Tribunal Supremo estableció un estándar que este Tribunal de Apelaciones debe emplear al revisar las concesiones o denegatorias de una solicitud de sentencia sumaria.

En primer lugar, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar una solicitud de sentencia sumaria, por lo que está llamado a realizar una revisión *de novo*, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, no se puede considerar evidencia que no se presentó ante el Foro *a quo*, y se debe examinar el expediente de la forma más favorable hacia la parte opositora de la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra*, pág. 116.

En segundo lugar, el Tribunal de Apelaciones debe revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36 y los criterios discutidos en los casos *SLG Zapata- Rivera v. J.F. Montalvo, supra* y *Meléndez González et al. v. M. Cuebas, supra*.

En tercer lugar, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. *Íd.* De haberlos, se debe exponer los hechos materiales en controversia y los

incontrovertidos, a tenor con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Véase *Meléndez González et al. v. M. Cuebas, supra*.

En cuarto lugar, si el Tribunal de Apelaciones determina que no existen hechos materiales en controversia, procederá a revisar si el Foro Primario aplicó correctamente el derecho. *Íd.*, pág. 119.

### C. Término de caducidad y prescripción

Un término es un plazo de tiempo que se concede por virtud de una ley para realizar un determinado acto procesal, cuyo incumplimiento puede conllevar alguna sanción como resolver la controversia sin la comparecencia de una parte o la pérdida de un derecho. *Bonilla Ramos v. Dávila Medina*, 185 DPR 667 (2012); *BBV v. ELA*, 180 DPR 681, 688 (2011). Un término puede ser de caducidad o prescripción. *Bonilla Ramos v. Dávila Medina, supra*; *Díaz Santiago v. International Textiles*, 195 DPR 862, 868 (2016). Ambos términos poseen la misma finalidad de impedir que los derechos permanezcan indefinidamente inciertos y dar firmeza a las relaciones jurídicas. *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 505 (2011); *Muñoz v. Ten. General*, 167 DPR 297, 302 (2006). No obstante, su diferencia consiste en que un término de caducidad no admite interrupción ni suspensión. *Íd.* Por cuanto, la consecuencia de un término de caducidad es que el derecho de la causa de acción se extingue por el mero transcurso del tiempo. *Íd.*; *Bonilla Ramos v. Dávila Medina, supra*. "La justificación o razón de ser de la caducidad radica en la naturaleza del derecho, el cual tiene una duración determinada". *Muñoz v. Ten. General, supra*, págs. 302-303. Es decir, una vez comienza a transcurrir un término de caducidad, no hay forma de revivirlo. *Íd.*, pág. 302. Por el contrario, un término prescriptivo se puede interrumpir en un número ilimitado de ocasiones, siempre que ocurra oportunamente mediante los medios que dispone la ley. *Íd.*

En lo atinente a los mecanismos de interrupción de la prescripción, el Artículo 1873 del Código Civil, *supra*, sec. 5303,

dispone que la prescripción se interrumpe por su ejercicio en los tribunales, por una reclamación extrajudicial o por cualquier acto de reconocimiento de la deuda por parte del deudor. Una vez el término queda interrumpido, comenzará a decursar nuevamente desde el momento en que se produjo el acto interruptor. *Meléndez Guzmán v. Berríos López*, 172 DPR 1010, 1019 (2008). En lo que nos concierne, una reclamación extrajudicial que interrumpe el término prescriptivo es una manifestación inequívoca de quien expresa su voluntad de no perder su derecho. *Íd.; Díaz Santiago v. International Textiles, supra*, pág. 870. En particular, una reclamación formulada ante un organismo administrativo constituye una reclamación extrajudicial. *Díaz Santiago v. International Textiles, supra.* Ahora bien, toda reclamación extrajudicial debe cumplir con los siguientes requisitos: (1) que sea oportuna, (2) que sea presentada por una persona con legitimación, (3) que el medio utilizado sea idóneo, y (4) que exista identidad entre el derecho reclamado y el afectado por la prescripción. *Íd.; Galib Frangie v. El Vocero de PR*, 138 DPR 560, 568 (1995). Además de interrumpir un término prescriptivo, una reclamación extrajudicial puede tener el efecto congelador hasta que culmine el proceso si el trámite administrativo o interno guarda identidad de propósitos con la acción judicial. *Íd.*

La caducidad aplica a los derechos potestativos, mientras que la prescripción a los derechos patrimoniales. *Indus. Equip. Corp. v. Builders*, 108 DPR 290, 295 (1979). Es decir, la prescripción no es una figura aplicable al derecho de familia, sino al derecho privado (patrimonial). *Martínez Soria v. Proc. Esp. Rel. Fam.*, 151 DPR 41, 57 (2000) (Naveira De Rondón, Opinión Concurrente). Por cuanto, "no pueden estar sujetos a prescripción los derechos que están fuera del comercio y no son susceptibles de disponibilidad por los particulares, entre los cuales derechos figuran los de filiación". *Almodóvar v.*

*Méndez Román, supra*, pág. 246. Al respecto, el profesor Guaroa Velázquez distinguió ambas figuras de la siguiente manera:

> La prescripción exige necesariamente una relación jurídica establecida entre un acreedor y un deudor: supone dos patrimonios en presencia; de aquí que la prescripción siempre extingue una obligación. Ahora bien, no hay prescripción sino caducidad en todas las hipótesis en que la ley prefija un plazo para realizar cierto acto-- que implique una relación jurídica de índole crediticia --, el cual deba ser efectuado dentro del plazo establecido, de suerte que en caso de retardo el interesado pierda su pretensión, no pudiendo ya verificar útilmente el acto del cual dependía la conservación de su derecho o la protección de su interés. *Íd.*, pág. 296, citando a Guaroa Velázquez, *Las Obligaciones según el Derecho Puertorriqueño*, Ed. Equity, 1964, pág. 256.

### D. Término para presentar una acción de nulidad contractual

A tenor con el Artículo 1221 del Código Civil, *supra*, sec. 3408, el dolo constituye las palabras o maquinaciones insidiosas de parte de un contratante que induce al otro a celebrar un contrato que, sin tales representaciones, no hubiera hecho. El dolo grave puede producir la nulidad del contrato, mientras que el dolo incidental obliga a quien lo empleó a indemnizar por daños y perjuicios. Artículo 1222 del Código Civil, *supra*, sec. 3409; Véase también *Rivera v. De Ignacio Díaz Luzunaris*, 70 DPR 181, 187 (1949). Con respecto al dolo grave, el Artículo 1253 del Código Civil, *supra*, sec. 3512, titulado como término prescriptivo de la acción de nulidad dispone:

> La acción de nulidad sólo durará cuatro (4) años.
> Cómo se computará. – Este tiempo empezará a correr:
> […]
> En los de error, dolo, o falsedad de la causa. – en los de error, o dolo, o falsedad de la causa, desde la consumación del contrato;
> […] *Íd.* Véase también *Código Civil de Puerto Rico Comentado: Suplemento Acumulativo para 1992*, San Juan, Ed. Butterworth de Puerto Rico: Division Equity Publishing, pág. 31.

Sobre el particular, el profesor Vélez Torres estableció que la jurisprudencia puertorriqueña se inclinaba a determinar que el término para instar una acción de nulidad al amparo del Artículo 1253 del Código Civil, *supra*, sec. 3512, era de prescripción en vez de caducidad, a pesar de no resolverlo expresamente. J. R. Vélez Torres, *Curso de Derecho Civil*, T. IV, Vol. II, San Juan, Ed. Universidad

Interamericana de Puerto Rico, 1990, pág. 129. A saber, el máximo foro judicial ha aludido que la acción para solicitar la nulidad prescribía a los cuatro (4) años desde la consumación del contrato. *Rivera v. De Ignacio Díaz Luzunaris, supra*; *Colón v. Promo Motor Imports, Inc.*, *supra*; *Díaz v. Transporte*, 163 DPR 759, 776 (2005); *López v. Juan*, 102 DPR 383, 393 (1974); *Girod Lube v. Elías Acevedo*, 94 DPR 406, 415 (1967); *Quiñones v. Quiñones Irizarry*, 91 DPR 225, 281 (1964); *Zayas v. Orraca*, 80 DPR 339, 352 (1957); *McCormick v. Martínez*, 49 DPR 473, 487 (1936). Véase también <u>*Código Civil de Puerto Rico Comentado: Suplemento Acumulativo para 1992*</u>, *op cit.*; M. E. García Cárdenas, Derecho de Obligaciones y Contratos. 2da. ed., Puerto Rico, Ed. MJ Editores, 2017, págs. 544-546. De hecho, previo a la promulgación del Código Civil del 1930, el Tribunal Supremo había establecido lo siguiente: "La ley dispone que la acción de nulidad solo dura cuatro años. Y si tal acción no se ejercita dentro de dicho plazo contado en la firma que la misma ley determina, la acción prescribe y el contrato anulable se convalida". *Agostini v. Philippi*, 16 DPR 663, 666 (1910).

No obstante, en el caso *Almodóvar v. Méndez Román, supra*, relacionado a la impugnación de una filiación, el Tribunal Supremo mencionó que el término del Artículo 1253 del Código Civil, *supra*, sec. 3512, como uno de caducidad, según se reconocía mayoritariamente en el derecho español.

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**III.**

En el presente caso, Autogermana se circunscribió a señalar que el Foro Primario erró al no declarar Ha Lugar su solicitud de dictar sentencia sumaria a su favor ante el argumento de que la reclamación en su contra estaba vencida por haberse presentado posterior al término de cuatro (4) años para presentar una acción de

nulidad, a tenor con el Artículo 1253 del Código Civil, *supra*, sec. 3512. El peticionario arguyó que el TPI erró al indicar que el término para instar una acción de nulidad era de prescripción, ya que considera que es uno de caducidad.

Tras no existir controversia de cumplimiento con los requisitos de la Regla 36 de Procedimiento Civil, *supra*, R. 36, y los hechos materiales en controversia, resolvemos.

Autogermana fundamentó su señalamiento de error en el resultado del caso *Almodóvar v. Méndez Román, supra*, para establecer que el término para instar una acción de nulidad de contrato es de caducidad. Sin embargo, dicho caso dista del que nos concierne. Pues, distinto a la controversia en *Almodóvar v. Méndez Román, supra*, los hechos de este caso no están relacionados con el derecho de familia, al que no es aplicable la figura de la prescripción.

Al contrario, la reclamación del señor Chevres Colón de dolo contractual contra Autogermana es de naturaleza patrimonial. Pues, el recurrido alegó que Autogermana incurrió en dolo al incrementar el financiamiento del vehículo BMW 335-I por la deficiencia entre el valor en el mercado del BMW 328-I y el saldo del préstamo de dicho automóvil. A su vez, adujo que el peticionario actuó fraudulentamente al falsificar la información del Contrato de Compraventa que se envió a Popular Auto para indicar que el BMW 335-I era un vehículo nuevo. Ante esto, argumentó que si hubiese conocido que el BMW 328-I adeudaba más que su valor en el mercado y que la deficiencia se le estaría adjudicando al precio del BMW 335-I, nunca hubiese realizado la compraventa. Al tratarse sobre una transacción comercial atinente al derecho patrimonial, le era aplicable la figura de la prescripción que admitía interrupción y suspensión. No debemos olvidar que, conforme se expusiera previamente, el Tribunal Supremo de Puerto Rico ha resuelto que el término de cuatro (4) años para instar una acción de nulidad es

prescriptivo, conforme con el Artículo 1253 del Código Civil, *supra*, sec. 3512. Véase *Rivera v. De Ignacio Díaz Luzunaris, supra; Colón v. Promo Motor Imports, Inc., supra; Díaz v. Transporte, supra; López v. Juan, supra; Girod Lube v. Elías Acevedo, supra; Quiñones v. Quiñones Irizarry, supra; Zayas v. Orraca, supra,* y *McCormick v. Martínez, supra.*

Así las cosas, tal y como se fuera establecido en la relación de hechos, el contrato objeto de este recurso se otorgó el 26 de junio de 2014, mientras que la *Querella* se interpuso el 25 de mayo de 2017, dentro del término prescriptivo de cuatro (4) años desde la consumación del contrato. Dicho trámite administrativo dirigido contra la peticionaria tuvo el efecto de constituir una reclamación extrajudicial que interrumpió el término prescriptivo de las causas de acción de dolo contractual y fraude contra Autogermana. A saber, en primer lugar, se presentó oportunamente, al tercer año del recurrido adquirir el vehículo BMW 335I. En segundo lugar, dicha acción administrativa fue presentada por el señor Chevres Colón, quien era la persona con legitimación. En tercer lugar, la *Querella* constituyó un medio idóneo para Autogermana conocer sobre la reclamación en su contra. Por último, existía identidad entre el derecho reclamado y el afectado por la prescripción. Por ello, el término prescriptivo de cuatro (4) años para instar la reclamación judicial en contra de Autogermana comenzó a decursar nuevamente a partir del 21 de marzo de 2018, fecha en que el DACo cerró el caso. En virtud de que el señor Chevres Colón presentó la *Demanda* a los cinco (5) meses de cerrarse el trámite administrativo, ejerció su derecho oportunamente.

Por lo anterior, concluimos que no erró el Foro recurrido al establecer que el término de cuatro (4) años para instar una acción de nulidad era prescriptivo, de conformidad con el Artículo 1253 del Código Civil, *supra,* sec. 3512. Asimismo, entendemos que el TPI actuó correctamente al resolver que la *Querella* interpuesta por el

recurrido tuvo un efecto interruptor del término para presentar esta *Demanda* por las causas de acción de dolo contractual y fraude. Por ello, se confirma la determinación recurrida.

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se confirma la *Sentencia Parcial* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones